UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

COY ANITA SHERMAN

CIVIL ACTION NO. 06-cv-1354

VERSUS

REFERRED TO:

U.S. COMMISSIONER SOCIAL
SECURITY ADMINISTRATION

MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Coy Anita Sherman ("Plaintiff") applied for benefits due to depression and fibromyalgia. Plaintiff has a ninth-grade education and a semi-skilled work history as a sales clerk and parimutuel ticket seller. She was 45 years old when ALJ Charles Lindsay denied her claim.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Plaintiff asserts two issues on appeal. She first contends that the ALJ erred when he found that her testimony was not fully credible. Second, Plaintiff argues that the ALJ erred when he did not specifically discuss her alleged handling and fingering limitations.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Testimony; Medical Records**

Plaintiff testified regarding her work history. She said that she has held various jobs for two to 10 months in recent years. She reported that she recently tried to work as a cashier, but lasted only 13 days because of anxiety. She reported that she was hospitalized in 2001 or 2002 with either a heart attack or anxiety attack. She also testified that she had a tumor in her brain that her doctors were keeping an eye on. She is able to drive, and she grocery shops. Plaintiff estimated that she could sit for only 15 to 20 minutes at a time, and

that she would get dizzy and tremble if she had to be on her feet more than one and one-half hours. She estimated that she could lift only about 20 pounds. Plaintiff testified that she sees doctors at LSU-HSC for pain management and is given Valium for stress. She stated that her fibromyalgia had been with her for better than 10 years and that she believed it was getting worse every month. Plaintiff generally described herself as quite limited. Tr. 176-85.

The ALJ weighed that testimony, which he personally observed, against the medical records. His decision, which made specific reference to Social Security Ruling 96-7p (credibility issues), examined the medical records and testimony in great detail. Tr. 12-15.

One report that the ALJ considered is a 2004 consultative examination by clinical neuropsychologist James Pinkston, Ph.D. Plaintiff reported to Dr. Pinkston that her hands began to hurt in 1991, and she pursued surgery that did not resolve the pain. She also complained of chronic back and generalized muscle pain throughout her body. Plaintiff said she was then cleaning two houses to pay her bills. She stated that her hands hurt so much on some days that she was unable to write her signature on school paperwork for her children. She reported her pain, on a 1 to 10 scale, as the most severe 10, with an 8 on better days. Plaintiff stated that she preferred to be alone, did not want any friends, and can only manage being around two people at a time.

A depression test resulted in a score that Dr. Pinkston found to reflect significant symptoms of emotional distress commensurate with a severe level of depression. Another test for cognitive functioning fell within gross normal limits. Dr. Pinkston diagnosed

depressive disorder, NOS, severe; schizoid personality disorder; chronic pain, by history; and some minor physical problems. Dr. Pinkston found the immediate prognosis poor for Plaintiff's ability to move into a interpersonally demanding occupation. "However, from a psychological standpoint, she would likely be able to adequately perform jobs with minimal interpersonal demands as she has done in the past." He determined that Plaintiff appeared capable of maintaining appropriate attention and exhibiting adaptive learning and memory skills, but he anticipated difficulty interacting with the public, co-workers, and supervisors. Tr. 125-28.

Scott Beach, M.D., conducted an internal medicine consultative examination in 2005. Plaintiff complained of pain. She was then taking Methadone, Valium, Protonix, and aspirin. Plaintiff reported musculoskeletal pain in her back, hip, and other areas. Dr. Beach saw no redness or obvious deformity. Plaintiff exhibited tenderness of her shoulders, upper back, hips, knees, ankles, and thighs. She had a normal gait, and she could bend and squat without difficulty. Her grip strength was 5/5 "with adequate fine motor movements, dexterity and ability to grasp objects bilaterally." Dr. Beach considered the prior diagnosis of fibromyalgia made by Dr. Goodman, and he observed multiple tender points on exam (which is consistent with that diagnosis), but he also witnessed normal range of motion and function of the musculoskeletal system. He concluded that, despite Plaintiff's complaints, "I believe the claimant should be able to sit, walk, and/or stand for a full workday, lift/carry objects of at

least 20 pounds, hold a conversation, respond appropriately to questions, carry out and remember instructions." Tr. 167-69.

The ALJ noted that medical records, including an MRI of the brain, revealed a small, benign pineal cyst that required no treatment. Plaintiff, however, told consultative doctors and testified at the hearing that she had a "brain tumor" that was being followed. Plaintiff has also claimed that she had a heart attack, but a 2004 X-ray was negative for cardiac abnormalities, and the treating physician remarked that the treatment Plaintiff said she received after the alleged heart attack was inconsistent with such a diagnosis.

**Credibility Assessment**

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). And an ALJ need not specifically address the credibility of each line or component of testimony to withstand judicial scrutiny. See Clary v. Barnhart, 2007 WL 201145 (5th Cir. 2007) ("The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility") and Undheim v. Barnhart, 2007 WL 178062 (5th Cir. 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination").

The credibility assessment in this case was more than adequate to allow the decision to stand without remand for further explanation. The ALJ thoroughly reviewed the medical evidence, in much greater detail than set forth herein, and he compared aspects of that evidence to testimony offered by Plaintiff. He also noted inconsistencies in the record regarding the medications that Plaintiff was taking at various times. After several paragraphs of discussion, he determined that Plaintiff's assertions regarding the extent of her limitations were exaggerated and not fully credible.

Furthermore, the ALJ did not then find that Plaintiff was without limitation. He concluded that the evidence of record, including Plaintiff's testimony, was sufficient to show a rather limited RFC for only light work, subject to additional restrictions. The ALJ did not, therefore, totally disregard Plaintiff's problems stemming from fibromyalgia and depression. He merely found that the medical evidence did not reflect limitations stemming from those problems so great as alleged by Plaintiff. His assessment and determination were reasonable, and they withstand judicial scrutiny under the substantial evidence standard.

**Handling and Fingering Limitations**

Plaintiff testified that she had surgery in about 2000 for carpal tunnel syndrome. At the hearing, during the questioning of the VE, Plaintiff stated, "I've lost about 50 percent usage of my hands." She said that she has "trigger fingers" that prevents the use of her fingers at times. Tr. 191-92.

The ALJ then asked the VE to assume the RFC he assessed, plus an ability to only frequently handle and finger. The VE identified jobs that such a person could still perform. The ALJ then asked the VE to assume that the person could only occasionally handle and finger. The VE stated that such a degree of limitation would eliminate all unskilled light or sedentary jobs. Tr. 192.

Plaintiff argues that the case should be remanded because the ALJ did not specifically discuss this claims limitation in his written decision. Plaintiff cites Moore v. Barnhart, 05-cv-0696 as an example of a case where this court has remanded for failure of the ALJ to evaluate and make an agency-level finding regarding squarely presented testimony of a limitation (if accepted) the VE indicated would change the ultimate decision.

The ALJ did mention in his discussion of Dr. Pinkston's report that Plaintiff complained of hand pain and tingling that sometimes prevented her from signing her name. He also discussed all of the other medical evidence. Those records included Dr. Beach's finding that Plaintiff had a grip strength of 5/5 "with adequate fine motor movements, dexterity and ability to grasp objects bilaterally." Tr. 168. Dr. Senff performed an evaluation in 2004. He noted the well-healed surgical scar on the right wrist from the previous carpal tunnel release. He then found that Plaintiff had a normal musculoskeletal exam with full range of motion, normal grip strength, and normal dexterity." Tr. 122-24.

After reviewing those and other records, the ALJ stated that there was no medical evidence to support certain asserted conditions and/or symptoms including heart disease,

heart attack, brain tumor, "extremity numbness or weakness," or dizziness. Tr. 15. Given the ALJ's detailed discussion of the medical records, his apparent discounting of any fingering difficulty claim in his written decision, and the conflict of the objective evidence with Plaintiff's claim of a fingering limitation, judicial relief is not warranted under the circumstances. The ALJ's decision adequately addressed the claimed fingering limitation so that the court could conduct meaningful judicial review. Accordingly, a judgment will be entered to affirm the Commissioner's decision to deny benefits.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 20th day of August, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE